### 11449

### WILLIAMS *ET AL.* v. BAMBERG E. & W. RY. CO. *ET AL.*
### RENTZ *ET AL.* v. SAME

#### (121 S. E., 775)

RAILROADS—PROPER DISTRIBUTION OF STOCK AND BONDS.—Transactions involving the organization and management of a railroad company, the sale and distribution of its bonds and stock, and the construction and operation of the road, examined, and bonds that had been distributed ordered to be returned to the treasury, and the stock apportioned in a stated manner.

Before MEMMINGER, J., Bamberg, 1918. Affirmed as modified.

Separate actions by Jones A. Williams, May B. Williams and others against the Bamberg, Ehrhardt & Walterboro Railway Co. and others and by C. Rentz and others against the Bamberg, Ehrhardt & Walterboro Railway Co., Jones A. Williams, May B. Williams and others. From the decree rendered, Jones A. Williams and May B. Williams appeal.

*Messrs. J. O. Patterson, Jr.,* and *D. W. Robinson,* for appellants, cite: *Scope of relief:* 1 Pom. Eq. Juris. 4th Ed. Sec. 170; 213; 144 N. W., 952; 93 Pac., 75; 34 L. R. A. (N. S.), 125; 176 Fed., 709; 34 L. R. A. (N. S.), 125; 176 Fed., 709; 68 S. C., 256; 3 Strob. Eq., 340; Pomeroy Vol. 1 (4th Ed.) Sec. 378, 384, 407, 410; Estoppel; 2nd Pom. Eq. Juris. Sec. 805, Vol. 2 (4th Ed.), 802; 97 S. C., 129; 111 S. C., 57; 102 S. C., 371; 104 S. C., 338; 9.

*Messrs. Raysor, Moss & Lide,* for respondent.

*Messrs. S. G. Mayfield* and *J. Wesley Owens,* for defendants-respondents (C. W. Rentz and others).

March 14, 1924.

The opinion of the Court was delivered by MR. JUSTICE COTHRAN.

These two cases were tried together on Circuit, and will be so considered here.

The case first named was originally instituted by Jones A. Williams, on behalf of himself and all other creditors of the railroad company, for the purpose of having the Court appoint a receiver to take charge of the property of the railroad company, for an injunction against the continuance of the management at that time, alleging its incompetency, and alleging the insolvency of the corporation. The plaintiff claimed to be a creditor and stockholder of the company; his claim as a creditor being based upon his ownership of $43,000 of first mortgage bonds, and as a stockholder upon the ownership of certain shares of preferred and common stock.

After answer by the defendants, the plaintiff applied before Hon. Ernest Moore, Circuit Judge, for an injunction and for the appointment of a receiver. The motions were refused, and an order was passed committing the management of the railroad to the directors during the pendency of the litigation. The plaintiff thereafter filed an amended and supplemental complaint, under an order made in July, 1921, in which his wife, May B. Williams, was joined as a party plaintiff, the allegation affecting her being that the plaintiff Jones A. Williams had assigned to her the $43,000 of bonds.

The complaint further alleged that in the construction of the railroad the plaintiff Jones A. Williams and the defendants E. C. Hays and W. C. Wolfe had contributed approximately the following amounts of money: Jones A. Williams, $30,000; E. C. Hays, $20,000; W. C. Wolfe, $2,000 —that the preferred and common stock issued by the railroad to the construction company, of which the three parties

named were the only stockholders, had been equally divided among them, notwithstanding the unequal amounts of money which they had furnished.

The plaintiff prayed:

(1) The appointment of a receiver to take charge of the railroad.

(2) That Hays and Wolfe surrender for cancellation all bonds and stock held by them in excess of their just proportions.

(3) That if necessary the railroad be sold and the proceeds divided equitably.

The defendants the railroad company, E. C. Hays, and W. C. Wolfe answered, alleging that the correct amounts of money furnished by the parties respectively were: Jones A. Williams, $23,000; E. C. Hays, $21,000; W. C. Wolfe, $5,000—that the preferred and common stock were by agreement divided equally among the parties; that the bonds were not to be issued until the rails had been paid for; that they were issued upon the promise of Williams to sell them and pay for the rails and divide the balance; that $30,000 was required to pay for the rails, and that amount of bonds was retained in the treasury pending the sale by Williams; that the remainder was distributed and delivered to the three parties named as follows: To Jones A. Williams, $30,000 E. C. Hays, $25,000; W. C. Wolfe, $6,000—that the entire issue of bonds was in violation of the contract between the railroad company and the construction company, and should be returned to the treasury; that the preferred stock should be proportioned among Williams, Hays, and Wolfe; that the common stock is of no value. They deny the insolvency of the corporation, or that any necessity exists for the appointment of a receiver.

Thereafter, in August, 1921, the second action named above was instituted by C. W. Rentz on behalf of himself and all other stockholders, against the railroad company, Jones A. Williams, May B. Williams, E. C. Hays, and W.

C. Wolfe, and the Ajax Construction Company, alleging the facts hereinafter stated, and practically making common cause with the railroad company, E. C. Hays, and W. C. Wolfe in the attack made by them in their answer upon the issue of bonds.   Answer was filed by Jones A. Williams and May B. Williams.   The record does not disclose answers by the other defendants.

The two cases were referred to J. J. Brabham, Jr., Esq., to take the evidence and report the same to the Court.   This was done, and the case came on to be heard by his Honor, Judge Memminger, in 1923.   He filed a decree dated May 28, 1923, in which he dismissed the complaint of Jones A. Williams and May B. Williams.   No specific adjudication is made in reference to the complaint in the Rentz case, though the effect of the decree is to sustain his attack upon the bond issue.   From the decree of Judge Memminger, the plaintiffs Jones A. Williams and May B. Williams have appealed.

The record is voluminous, not unnecessarily so, 275 printed pages.   The following facts we conclude have been established by the evidence:

The railroad company was chartered by Act of General Assembly in 1906, amended in 1908.   In 1911 a corporation was organized under the name of the Ajax Construction Company, composed of three stockholders Williams, Hays, and Wolfe, for the purpose of constructing the railroad from Ehrhardt to Bamberg, and there connecting with the Atlantic Coast Line and other lines.   Accordingly, on May 27, 1911, a written contract was entered into between the railroad company and the construction company, signed by J. A. Wyman as president of the railroad company and Jones A. Williams as president of the construction company, by which the construction company undertook to build a standard steam railroad between the points indicated, which included grading, cuts, fills, bridges, cross-ties, and rails, all in position ready for trains.   The railroad company under-

took to provide rights of way, a depot site at each of the terminals, and to pay the construction company $15,000 per mile for the 14 miles as follows: When grading had been completed, $400 per mile in cash $5,600; when the cross-ties had been placed on the roadbed, $500 per mile in cash, $7,000; when the steel rails had been delivered, or bill of lading with draft attached was to be paid, the difference between $16,000 and the sum of the two items for grading and cross-ties ($5,600 and $7,000, $12,600), $3,400. So that the aggregate cash payment should not exceed $16,000. "Provided, that no part of the said balance ($3,400) shall be paid until the said roadbed has been completed and the cross-ties placed thereon; and provided, further, that if the said steel rails are delivered in sections or installments, the balance shall be apportioned to such deliveries." The $16,-000 in cash thus provided for had been raised by private subscriptions to the common stock of the railroad company. The remainder of the contract price (14 miles at $15,000 per mile, $210,000, less application of the cash payment of $16,000), $194,000, was to be paid in bonds preferred stock and common stock, "the bonds and preferred stock to be issued upon completion of the said railroad"; and the common stock to the amount of $16,000 should be issued to the private subscribers, 'but no other part of the common stock shall be issued until the completion of the said railroad." (Note.—It is not stated in the contract in what proportions of bonds, preferred stock and common stock, this remainder of $194,000 should be made up. It appears to have been assumed by all parties, as the bond and stock issues were limited by the contract to bonds, 14 miles, $6,-000, $84,000; preferred stock, 14 miles, $4,000, $56,000; common stock, 14 miles, $5,000, $70,000; total, $210,000— that this was intended as the basis of apportionment, the common stock, $70,000, reduced by $16,000, leaving $54,-000 for the construction company.)

It was stipulated that:

"This contract shall be deemed complete when a locomotive can be operated over the whole length of the line from Bamberg to Ehrhardt, and when the said railway line has been inspected by the railroad commissioners of South Carolina and has been accepted for traffic."

After considerable delay the construction operations were commenced, and by the early part of 1913 the roadbed had been made ready for laying the rails. The contract does not in so many words provide that the construction company should furnish the cross-ties and rails; it appears, however, to be conceded that that obligation was included in the undertaking to "construct" the railroad; and, after many efforts the construction company, for lack of funds, was unable to procure the rails. After much further delay an arrangement was made by the construction company with the Atlantic Coast Line Railway Company by which the latter agreed to lease to the railroad company the necessary rails and fixtures at a rental of $175.00 per month. This was incorporated in a written lease dated ————, 1913, and guaranteed by Williams, Hays and Wolfe. It will be noticed that in this way the rails which under the contract were to be furnished by the construction company were actually obtained upon the obligation of the railroad company. It was deemed necessary, in order to carry out this arrangement, that a new contract, to some extent modifying the original contract for construction dated May 27, 1911, be entered into between the construction company and the railroad company. Accordingly this was done on October 8, 1913. This supplemental contract contained a stipulation relating to a certain right of way at Ehrhardt, not material to the present inquiry. It authorized the execution of the lease of the rails by the railroad company from the Coast Line, and the execution of a bond by the Bamberg, Ehrhardt & Walterboro Railway Company for the performance of the terms of the lease, with surety furnished by

the construction company; the execution of a bond by the Bamberg Ehrhardt & Walterboro Railway Company with Williams, Hays, and Wolfe as sureties that the railroad would be operated for five years, beginning May 1, 1914. It also contained the following important stipulation:

"It is mutually agreed that no bonds shall be issued by the party of the first part [Bamberg, Ehrhardt & Walterboro Railway Company] as contemplated by the original contract between the parties hereto; but such bonds, if issued, and whenever issued, shall be held in the treasury of the Bamberg, Ehrhardt and Walterboro Railroad Company, to be used for the purchase of rails, fastenings therefor and equipment, for the use and operation of said railroad, if so much be necessary, and for no other purpose."

The lease of the rails was duly executed on ———, 1913; the bond securing the lease on ———, 1913; the bond guaranteeing operation for 5 years on ———, 1913; and the rails procured and laid. (These dates do not appear in the record for appeal.)

It thus appears that the construction company was relieved of its obligation to furnish the rails, the lease arrangement being substituted, and the construction company waiving its right to the $84,000 of bonds except to the excess over what was needed to buy the necessary rails, fastenings, and equipment, and agreeing that the bonds should remain in the treasury of the railroad company until these purposes should be accomplished.

In May, 1915, the rails having been laid, and the railroad being ready for operation, the same was taken over by the Atlantic Coast Line Railway Company under some arrangement not definitely explained in the record for appeal, and was operated by that railroad company until December———, 1916, at which time it was turned back to the owners.

In the meantime Wyman and Rhoad continued in office until December, 1915, they having on November 12, 1915,

tendered their resignations as president and treasurer, respectively, to take effect December 1, 1915.

On November 12, 1915, a meeting of the directors of the railroad company was held at which several matters of importance were transacted:

(1) The resignations of Wyman and Rhoad were accepted, and the following officers were elected: Jones A. Williams, president, W. C. Wolfe, vice president, E. C. Hays, secretary and treasurer. It will be noted that these men were the only stockholders of the construction company, and thereafter the management of both corporations was in the same hands.

(2) A resolution was adopted confirming the operating and traffic contract which Wyman and Rhoad had entered into with the Atlantic Coast Line.

(3) A resolution was adopted authorizing Wyman, as president, and Rhoad, as secretary, to issue $70,000 common stock; to deliver $16,000 thereof to trustees for the subscribers of that stock, and $54,000 to the construction company.

(4) A resolution was adopted authorizing Wyman, as president, and Rhoad, as secretary, to issue $56,000 preferred stock to the construction company.

(In passing, it appears unusual, if not strange, that these issues of stock were to be made by the officers whose resignations had been accepted and whose places had been filled.)

(5) A motion was adopted that all records and property be turned over to E. C. Hays, the newly elected secretary and treasurer.

(6) Following the minutes of the directors' meeting relating to the foregoing matters, all of which are referred to as having been passed or adopted, there appears a typewritten paper pasted in the book purporting to be a resolution authorizing the issue of $100,000 bonds and the execution of a mortgage or trust deed securing them. The paper was prepared by W. C. Wolfe. It is not dated. No reference

is made to it in the minutes. W. C. Wolfe testified that he did not know whether or not, as a matter of fact, it was actually adopted. We have discovered no testimony in the case that the resolution was adopted at the directors' meeting. The resolution does not appear to have been pasted in the record book until 1917 by the witness Folk.

On November 23, 1915, in pursuance of the foregoing resolutions numbered 3 and 4, $54,000 of the common stock of the railroad company and $56,000 of the preferred stock were issued, the certificates being signed by Wyman, as president, and Rhoad, as secretary and treasurer, and delivered to the construction company. It is a matter of strange uncertainty both as to the time of the issue of the $100,000 of bonds and as to the time when they were authorized. Note that the contract limited the issue of bonds to $84,000, and the only claimed authority for the issue is the resolution of the board of directors. We have been cited to no authority, and know of none, for the authorization of an issue of bonds by the directors of a corporation. In ordinary business corporations this can be done only by the stockholders after complying with certain strict formalities. That a railroad corporation is an exception to this rule we have not been informed.

On January 8, 1916, the $100,000 of bonds, less $35,000 retained by Hays, as treasurer ($65,000), were delivered by Hays as follows: To Jones A. Williams, $34,000; E. C. Hays, $25,000; W. C. Wolfe, $6,000. The $35,000 of bonds retained by Hays were receipted for by him "to be held by me as treasurer of said companies until sold; that said bonds are to be sold and from the proceeds shall be paid the debts of said companies [that is, the railroad company and the construction company], and the surplus if any shall be divided among and between J. A. Williams, E. C. Hays, and W. C. Wolfe." Thereafter, on April 6, 1916, Hays delivered to Williams $5,000 of said bonds to reimburse him for half of the amount paid by Williams to the Cameron

Bank upon a debt of the Construction Company, and $4,000 of said bonds to reimburse him for half of the amount paid by Williams to the Bamberg Banking Company upon a debt also of the construction company; and a similar issue was made for the other halves of these debts to E. C. Hays, leaving but $17,000 of the retained $35,000, in the hands of Hays, as treasurer. The basis upon which this distribution of the $65,000 of bonds, among Williams, Hays, and Wolfe was the respective contributions which they had made to the capital and expenses of the construction company as follows: Williams, $24,000; Hays, $17,000; Wolfe, $4,000. Allowing $150 of bonds for each $100 of contributions, the result would be: Williams, $36,000; Hays, $25,500.00; Wolfe, $6,000. Williams, it appears, received $2,000 less than he was entitled to upon this basis, and Hays $500 less.

On the same day that the $100,000 of bonds were distributed, the $54,000 of common stock and the $56,000 of preferred stock which had been issued to the Construction Company, were also distributed as follows:

Common stock to—

| | |
|---|---|
| J. A. Williams | $ 18,000 |
| E. C. Hays | 18,000 |
| W. C. Wolfe | 18,000 |
| | $ 54,000 |

Preferred stock to—

| | |
|---|---|
| J. A. Williams | $ 19,000 |
| E. C. Hays | 19,000 |
| W. C. Wolfe | 18,000 |
| | $ 56,000 |

The basis for this distribution was share and share alike, with a slight difference in favor of Williams and Hays in the preferred stock.

From the foregoing statements and conclusion, we are of opinion that the Circuit Judge properly decided that the beneficiaries of the bond distribution acquired no title to the bonds which they received, and that they must be returned to the treasury of the railroad company to be held pursuant to the terms of this supplemental agreement of October 8, 1913.    It is not proper that the bonds be canceled, for the reason that, after the purpose for which they are retained in the treasury shall have been accomplished, the stockholders of the construction company are entitled to the residue.

We do not agree with the conclusions of the Circuit Judge in reference to a redistribution of the preferred and common stock.    The three parties interested, Williams, Wolfe, and Hays, in their attempted distribution of bonds, did so upon the basis of their several contributions to the construction company:

| | |
|---|---:|
| Williams | $ 24,000 |
| Hays | 17,000 |
| Wolfe | 4,000 |
| | $ 45,000 |

And it is only fair that the stock should be similarly distributed.    In fact, both Hays and Wolfe not only express their willingnesss but demand that this be done, so far as the preferred stock is concerned.    They allege that the common stock is of no value; its distribution is therefore a matter of no concern to them.

Upon the foregoing basis:

The common stock should have been apportioned to—

| | |
|---|---:|
| Williams | $ 28,800.00 |
| Hays | 20,400.00 |
| Wolfe | 4,800.00 |
| | $ 54,000.00 |

The preferred stock to—

Williams ...........................$ 29,866.67

Hays .............................    21,155.55

Wolfe ............................     4,977.78

                                   $ 56,000.00

Williams is short:

Common stock ...........$ 10,800.00

Preferred ...... .........    10,866.67

Hays is short:

Common stock ...........$  2,400.00

Preferred .............     2,155.55

                                  $ 26,222.22

Wolfe has over received:

Common stock ...................  $ 13,200.00

Preferred .......................     13,022.22

And is due to Williams:

Common stock ...........$ 10,800.00

Preferred .............    10,866.67

To Hays:

Common stock ...........    2,400.00

Preferred .............     2,155.55

                         $ 26,222.22  $ 26,222.22

Upon all other matters considered the Court is satisfied with the decree of the Circuit Judge.

The judgment of this Court is that the judgment of the Circuit Court, except as herein modified, be affirmed.

MESSRS. JUSTICES WATTS, FRASER and MARION concur.

MR. CHIEF JUSTICE GARY did not participate.